UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY PITRUZZELLO,<br><br>Plaintiff,<br><br>-against-<br><br>SPORTSMAN'S WAREHOUSE HOLDINGS, INC., JOSEPH P. SCHNEIDER, JON BARKER, MARTHA BEJAR, PHILIP C. WILLIAMSON, CHRISTOPHER EASTLAND, GREGORY P. HICKEY, and RICHARD MCBEE,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Anthony Pitruzzello ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Sportsman's Warehouse Holdings, Inc. ("Sportsman's" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Sportsman's, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed acquisition of Sportsman's by Great Outdoors Group, LLC ("Great Outdoors") and its subsidiary, Phoenix Merger Sub I, Inc. ("Merger Sub") (the "Proposed Merger").

1

2.      On December 21, 2020, Sportsman's entered into an agreement and plan of merger by and among (i) the Company, (ii) Great Outdoors, and (iii) Merger Sub (the "Merger Agreement"). Pursuant to the which stockholders of Sportsman's will receive $18.00 for each share of Sportsman's common stock in consideration for their shares (the "Merger Consideration").

3.      On February 16, 2021, to convince Sportsman's shareholders to vote for the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the SEC. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the fairness opinion and financial analyses performed by the Company's financial advisor, Robert W. Baird & Co. ("Baird"); and (ii) the interests of the Independent Defendants in the Proposed Merger and steps taken to isolate those interests.

4.      Disclosure of this information is critical as the shareholder vote is scheduled to take place on March 23, 2021 at 10:00 a.m. Mountain Time (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Merger.

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Sportsman's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the

Defendants' misconduct.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.      The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Sportsman's common stock trades on the Nasdaq stock exchange, which is headquartered in this District, and the Company hired financial and legal advisors for the purposes of the Proposed Merger, which are also located in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003)

(collecting cases).

## PARTIES

10.     Plaintiff Anthony Pitruzzello is, and has been continuously throughout all times relevant hereto, the owner of Sportsman's common stock.

11.     Defendant Sportsman's Warehouse Holdings, Inc. is incorporated in Delaware and maintains its principal executive offices at 1475 West 9000 South Suite A, West Jordan, Utah 84088. The Company's common stock trades on the Nasdaq under the ticker symbol "SPWH".

12.     Individual Defendant Jon Barker is, and at all relevant times has been, the Chief Executive Officer, President, and a director for the Company.

13.     Individual Defendant Joseph P. Schneider is, and at all relevant times has been, the Chairman of the Board for the Company.

14.     Individual Defendant Martha Bejar is, and at all relevant times has been, a director of the Company.

15.     Individual Defendant Philip C. Williamson is, and at all relevant times has been, a director of the Company.

16.     Individual Defendant Christopher Eastland is, and at all relevant times has been, a director of the Company.

17.     Individual Defendant Gregory P. Hickey is, and at all relevant times has been, a director of the Company.

18.     Individual Defendant Richard McBee is, and at all relevant times has been, a director of the Company.

19.     The defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Individual Defendants" or the "Board", and together with Sportsman's as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.  Background of the Proposed Merger

20.     Sportsman's is an American outdoor sporting goods retailer which operates in states across the United States, including Alaska. Sportsman's Warehouse sells apparel, footwear, and gear which caters to sportsmen and sportswomen with interests in hunting, shooting, reloading, camping, fishing, and other outdoor recreational activities.

21.     Great Outdoors is a privately-held Delaware limited liability company with its principal executive offices located at 2500 East Kearney, Springfield, Missouri 65898. It is a holding company for the operations of Bass Pro Shops, Cabela's, White River Marine Group and a collection of nature-based resorts.

22.     On December 21, 2020, Sportsman's authorized the issuance of a press release announcing the Proposed Merger, which states in relevant part:

> **Sportsman's Warehouse to join The Great American Outdoors Group to better serve outdoorsmen and women**
>
> SPRINGFIELD, Mo. and WEST JORDAN, Utah, Dec. 21, 2020 (GLOBE NEWSWIRE) -- In an effort to better serve its loyal customers, Sportsman's Warehouse has entered into a definitive agreement to join the Great American Outdoors Group, parent company of Bass Pro Shops, Cabela's, White River Marine Group and a collection of nature-based resorts. The Great American Outdoors Group will remain a private company with a long-term view to do what is best for its customers, team members and conservation initiatives. As part of the agreement, Sportsman's Warehouse will be acquired for $18.00 per share in cash.
>
> The driving force behind the partnership is the two companies' similar histories and highly complementary business philosophies and geographic footprints. Both entities share a passion with their customers for fishing, camping, hunting, boating and other outdoor activities. Likewise, both are highly acclaimed retailers with well-deserved reputations for a broad offering of outstanding brand name and proprietary products, superior customer service, deeply knowledgeable team members and an unwavering passion for conservation. Uniting together represents an unprecedented "win-win" opportunity for outdoor enthusiasts.

5

"We are excited to be joining the Great American Outdoors Group. This merger brings together the greatest brands in the outdoor industry. As we look to the future, the combined entities provide our passionate associates with greater opportunities to serve the outdoor enthusiast. I couldn't be more proud of the nearly 8,000 Sportsman's Warehouse associates and their success in building our brand over the last 33 years. We look forward to a smooth transition and building our partnership," said Sportsman's Warehouse CEO Jon Barker.

"Today is a happy day for our companies, outdoor enthusiasts and for the cause of conservation," said Bass Pro Shops Founder and Great American Outdoors Group Leader, Johnny Morris. "As outdoor sports specialists with unwavering dedication to people who fish, hunt and enjoy the outdoors, we greatly admire the passionate team at Sportsman's Warehouse for their commitment to their customers and the sports we all love. By combining our best practices, our aim is to give our customers a best-of-the-best experience while further uniting them to support conservation," added Morris.

**Sportsman's Warehouse customers can expect all of what they love now plus a whole lot more**

**Widely expanded product offerings including:**

- **Access to the world's largest selection of premium fishing tackle** including legendary Bass Pro Shops and other premier brands

- **The largest selection of premium hunting gear** including the iconic Cabela's brand

- **Sportsman's Warehouse will be able to offer customers the world's leading boat brands, side-by-sides and ATVs at money-saving prices**. The company's great family of brands, Tracker, Nitro, Ranger, Ascend Kayaks and other products, are all built right here in the USA by American craftsmen and sold directly to customers through our stores and a select group of dealers, effectively giving customers the opportunity to buy factory-direct at money-saving prices.

**Low prices – guaranteed**.

- **Sportsman's Warehouse customers will enjoy The Great American Outdoors Group "Low Price Guarantee"** which offers the lowest everyday price on its full assortment, and will match or beat any qualified competing offers in store or online.

**Greater convenience and expanded online services and selection**

- **Receiving the best products faster** by leveraging the combined company's extensive network of distribution centers and stores to get the best products the fastest way possible in stores or online.

- **Maintaining a strong commitment to a regional and seasonal focus**. Customers will continue to enjoy localized merchandise and efforts like area weather conditions, hunting and fishing reports, photo braggin' boards and the opportunity to get "hands-on" with products alongside the guidance of local experts.

**Uniting together to better serve customers and the outdoors**

**The companies have collectively demonstrated unmatched commitment to customer service and satisfaction**. <u>**Bass Pro Shops recently ranked as the number three most reputable retailer in America by Reputation.com**</u>. Both companies are keenly focused on conservation initiatives and recognized for their commitment to serving their communities responsibly, ranking at the top of outdoor retailers on firearm safety and compliance.

**Conservation First**

More than anything, the partnership will invite Sportsman's Warehouse employees and customers to become a part of something bigger – a legendary commitment to conservation.

Inspired by the vision of Johnny Morris, The Great American Outdoors Group is leading North America's largest conservation movement – bringing together millions of passionate customers alongside dedicated team members, industry partners and leading conservation organizations – to collectively shape the future of the outdoors and all who love it for generations to come.

This unprecedented alliance is bringing together sportsmen and women to protect millions of acres of wildlife habitat every year, introduce thousands of kids and families to nature, and achieve major legislative victories that advance the outdoors and all who love it.

**About The Great American Outdoors Group**

The mission of the Great American Outdoors Group is to inspire everyone to enjoy, love and conserve the outdoors:

- Bass Pro Shops and Cabela's: As an avid young angler, Johnny Morris founded Bass Pro Shops in 1972 with eight square feet of space in the back of his father's liquor store in Springfield, Missouri, the company's sole location for its first 13 years of business. Johnny has turned his unending love of the outdoors into a company that serves millions of outdoor

enthusiasts across the United States and Canada. Bass Pro Shops united with Cabela's in 2017. Today, they operate 169 stores and more than 500 million outdoor enthusiasts visit its websites annually.

- About White River Marine Group: In 1978, Johnny revolutionized the marine industry when he introduced Tracker Boats, the first professionally rigged and nationally marketed boat, motor and trailer package. The popularity of Tracker Boats exploded and they have been the number one selling fishing boat brand in America for the last 42 years. White River Marine Group offers an unsurpassed collection of industry-leading brands. Collectively known as White River Marine Group, today the family of brands is the world's largest manufacturer of boats. In 2019, the company partnered with Textron to launch TRACKER OFF ROAD, offering a full line of ATVs and side-by-sides.

- About Our Nature Resorts: The company also operates a thriving hospitality division with award-winning nature resorts and attractions including Big Cedar Lodge in Missouri's Ozark Mountains. Located in the heart of Missouri's Ozark Mountains, Big Cedar Lodge is America's premier wilderness resort. A passion of Bass Pro Shops' founder, the 4,600-acre lakeside retreat connects families to the outdoors with a variety of nature-based experiences including fishing, boating, hiking, spa and wellness offerings, hosting 2.4 million guests annually. Signature attractions include Top of the Rock, home to world-class golf, dining, and entertainment; and Dogwood Canyon Nature Park, a 10,000-acre nonprofit wildlife nature park. Named "Number One Resort in the Midwest" by the readers of Travel + Leisure, the resort offers genuine Ozarks hospitality and a convenient location just south of Branson, Missouri.

23.     The Proposed Merger comes in the midst of the COVID-19 pandemic ("Pandemic"), at a time when stocks throughout the world are subject to great uncertainty and radical change. The Merger Consideration does not compensate stockholders for the intrinsic value of their shares. And so, piggybacking off the Pandemic, the Proposed Merger may provide a substantial discount to Great Outdoors, at the expense of the common stockholders who will not see the intrinsic value of their shares realized nor be able to partake in the continued growth of the Company. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for stockholders to properly determine how to vote their shares.

B.      The Misleading Proxy Omits Material Information

24.      On February 16, 2021, Defendants filed the materially incomplete and misleading

Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy

before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it

did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents

or omits material information concerning the companies' financial projections, the interests of the

Individual defendants in the Proposed Merger, as well as Baird's financial analyses. This

information is necessary for Sportsman's stockholders to make an informed decision on how to

vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-

9.

25.      *First*, the Proxy describes Baird's fairness opinion and valuation analyses

performed in support of its opinion yet omits critical information. Defendants concede the

materiality of this information in citing Baird's fairness opinion and its valuation analyses among

the reasons for recommending the merger to Sportsman's shareholders. However, the summaries

of Baird's fairness opinion and analyses provided in the Proxy fail to include key inputs and

assumptions. Without this information, as described below, Sportsman's shareholders are unable

to fully understand the analyses and, thus, are unable to determine what weight, if any, to place

on Baird's fairness opinion in deciding whether to vote in favor of the Proposed Merger. The

following omitted information, if disclosed, would significantly alter the total mix of information

available to Sportsman's shareholders.

26.      In summarizing Baird's *Discounted Cash Flow Analysis*, the Proxy Statement fails

to disclose: (i) the unlevered free cash flows utilized in the analysis, and each of the line items

underlying the unlevered free cash flows utilized by Baird; (ii) quantification of the inputs and

assumptions underlying the discount rates ranging from 8.75% to 11.75%; and (iii) Baird's basis

for assuming terminal values ranging from 7.0x to 8.5x year 2025 EBITDA.

27.     These key inputs are material to Sportsman's shareholders, and their omission

renders the summary of Baird's fairness opinion incomplete and misleading. As a highly-respected

professor explained in one of the most thorough law review articles explaining the fundamental

flaws with the valuation analyses bankers perform in support of fairness opinions: in a discounted

cash flow analysis a banker takes management's forecasts, and then makes several key choices

"each of which can significantly affect the final valuation."   Steven M. Davidoff, *Fairness*

*Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount

rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can
> markedly affect the discounted cash flow value. For example, a change in the
> discount rate by one percent on a stream of cash flows in the billions of dollars can
> change the discounted cash flow value by tens if not hundreds of millions of
> dollars….This issue arises not only with a discounted cash flow analysis, but with
> each of the other valuation techniques. *This dazzling variability makes it difficult
> to rely, compare, or analyze the valuations underlying a fairness opinion unless full
> disclosure is made of the various inputs in the valuation process, the weight
> assigned for each, and the rationale underlying these choices*. The substantial
> discretion and lack of guidelines and standards also makes the process vulnerable
> to manipulation to arrive at the "right" answer for fairness.  This raises a further
> dilemma in light of the conflicted nature of the investment banks who often provide
> these opinions.

*Id*. at 1577-78 (emphasis added). Without the above, material information, Sportsman's

shareholders cannot evaluate for themselves the reliability of Baird's fairness opinion, make a

meaningful determination of whether the implied equity value per share range reflects the true

value of the Company or was the result of Baird's unreasonable judgment, and make an informed

decision regarding whether to vote in favor of the Proposed Merger.

28.     ***Second***, the Proxy fails to disclose information concerning the background of the

merger. Specifically, it fails include details concerning whatever steps the Board took isolate itself

from potential conflicts of interest. Indeed, according to the December 21, 2020 press release

announcing the Proposed Merger, management may be retained in the post-merger company. Yet

the Proxy is silent as to this potentially significant conflict. Further disclosure is needed concerning

these conflicts of interest, so that stockholders may determine how much, if any, reliance to place

on their recommendation of fairness when making an informed decision regarding a merger

transaction.

29.     In sum, the omission and/or misstatement of the above-referenced information

renders statements in the Proxy materially incomplete and misleading in contravention of the

Exchange Act and in breach of the duty of candor/disclosure. Absent disclosure of the foregoing

material information prior to the expiration of the Proposed Merger, Plaintiff and other

Sportsman's shareholders will be unable to make a fully-informed decision regarding whether to

vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm,

warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(a) of the Exchange Act)**

30.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

31.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

32.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

34.     Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the valuation analyses performed by Baird in support of its fairness opinion.

35.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

36.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted

information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Baird reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Baird, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Baird's analyses in connection with their receipt of the fairness opinion, question Baird as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

37.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

38.     Sportsman's is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

39.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Sportsman's within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Sportsman's, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

44.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

47.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

50.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public stockholders.

51.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or he possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Proposed Merger or taking any steps to consummate the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

      C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: March 9, 2021                        **MONTEVERDE & ASSOCIATES PC**

                                          */s/ Juan E. Monteverde*
                                          Juan E. Monteverde (JM-8169)
                                          The Empire State Building
                                          350 Fifth Avenue, Suite 4405
                                          New York, NY 10118
                                          Tel:(212) 971-1341
                                          Fax:(212) 202-7880
                                          Email: jmonteverde@monteverdelaw.com

                                          *Attorneys for Plaintiff*